UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

   BARBARA MOORE,                                          Case No. 08-31004-dof
                                                                    Chapter 7 Proceeding
           Debtor.                                         Hon. Daniel S. Opperman
_____/
COLLENE K. CORCORAN, Trustee,

   Plaintiff,

v.                                                                    Adversary Proceeding
                                                                    Case No. 08-3105-dof

BARBARA MOORE,

   Defendant.
_____/

Opinion Re: Denial of Discharge to the Debtor
under 11 U.S.C. §§ 727(a)(3) and (a)(5)

Plaintiff filed this adversary proceeding seeking denial of the Debtor's discharge under 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4)(A), (a)(4)(D), and (a)(5). Defendant, Barbara Moore, filed an answer to the Plaintiff's Complaint and requests that she be granted a discharge. The Court conducted the trial of this matter on March 24, 2009, and then took this matter under advisement.

I. Findings of Fact

By stipulation of the parties in their "Joint Final Pre-Trial Statement," the following facts are uncontested. (*See* Docket no. 11). On March 14, 2008, Barbara Moore (the "Debtor"), filed her chapter 7 bankruptcy petition. The appointed, duly qualified and acting trustee in the Debtor's bankruptcy case is Collene K. Corcoran (the "Trustee").

In the fall of 2007, the Debtor received fire insurance proceeds from her insurance

1

company as a result of a fire at her residence located at 1110 Forest Hill, Flint, Michigan. The Debtor's insurance company agreed to pay the claim in the amount of $54,000. On or about September 26, 2007, the Debtor received $54,000 from her insurance adjuster, Allied & Associates, for payment from her fire insurance claim. The Debtor directed her insurance company to disburse the insurance proceeds by two checks, one made payable to Kimberly Moore in the amount of $27,00 and the other one made payable to her in the amount of $27,000. The Debtor initially testified that the check she received from the insurance company was made payable jointly to her and her niece, Kimberly Moore. The Debtor later testified that she gave $27,000 to her niece, Kimberly Moore, because her niece was a joint owner of the home at 1110 Forest Hill, Flint, Michigan.

The Debtor contacted legal counsel regarding filing for bankruptcy in August, 2007. Finally, the parties stipulate that the Debtor knew she was going to receive insurance proceeds from her claim when she contacted legal counsel regarding the filing of a bankruptcy.

Subsequent to the trial, the Court makes the following additional findings of fact. The Trustee's Exhibit 5 and the Debtor's Exhibit B are histories of an account held by the Debtor with Elga Credit Union, albeit in slightly different form. Both exhibits detail the deposit of $26,950 on September 26, 2007, and the subsequent withdrawal of all of that money with the remaining running balance of $67.86 as of November 17, 2007, in regard to the Trustee's Exhibit 5 and a $0 balance as of March 27, 2008, in regard to the Debtor's Exhibit B.

The Debtor testified that she paid a number of bills totaling $1,680.51 and further detailed that expenditure in Exhibit C. Another $5,000 was deposited in two certificates of deposit of $2,500 with Elga Credit Union as evidenced by Exhibit D. The Debtor's Exhibits E

2

and F consist of her efforts to substantiate payments made to creditors previously identified by her, as well as a number of gifts she made to close family members. Exhibit E, which consists of copies of a series of money order receipts totaling $3,865, have no independent verification other than an occasional note made by the Debtor on a receipt. The Debtor testified that she would purchase various money orders and then put the receipts in her car. Some receipts were kept, others were apparently lost.

Exhibits F, G, and H likewise detail the Debtor's payment of expenses regarding eyeglasses, water and sewer bills, hospital expenses, car payments, and purchases of TVs and electronic equipment at ABC Appliance, Inc. Exhibit H also includes various photos of the Debtor's extensive collection of perfume, shoes, boots, and "Betty Boop" items. Finally, Exhibit I is the Debtor's handwritten accounting of how she spent approximately $27,000. The Debtor's Exhibits B, D, and J were admitted without objection; the remaining exhibits were admitted over the objection of the Trustee.

At trial, the Debtor made every effort to understand and answer the questions asked of her. The Debtor responded to questions in an open and direct manner. Overall, the Court found the Debtor to be a credible witness. But it was also apparent to the Court that the Debtor is not a financially sophisticated individual. For example, the Debtor testified that although she co-signed an obligation of Kimberly Moore owed to Chase, the Debtor did not believe that she was responsible for this debt.

## II. Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1) and E. D. Mich. LR 83.50(a). This is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2)(J).

III. Applicable Law

Section 727(a) of the Bankruptcy Code provides that a debtor is entitled to a discharge unless one or more of twelve exceptions is met. Although exceptions to discharge are strictly construed against a creditor (*See Rembert v. AT&T Universal Card Services, Inc.* (*In re Rembert),*141 F.3d 277, 281 (6th Cir. 1998), "a discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor." *Wazeter v. Michigan National Bank (In re Wazeter)*, 209 B.R. 222, 227 (W.D. Mich. 1997). Pursuant to Fed. R. Bankr. P. 4005, the burden of proof in objecting to a discharge under § 727 is on the plaintiff and must be established by a preponderance of the evidence. *Keeney v. Smith* (*In re Keeney*), 227 F.3d 679, 683 (6th Cir. 2000); *Barclays/American Bus. Credit, Inc., v. Adams (In re Adams)*, 31 F.3d 389, 394 (6th Cir. 1994).

IV. Analysis

Subsections (2) and (4) of § 727(a) require some sort of scienter; subsections (3) and (5) do not. The Court's analysis will focus upon these two subsections of § 727(a).

A.  11 U.S.C. § 727(a)(3)

Section 727(a)(3) of the Code provides that the court shall grant a debtor a discharge unless,

> The debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

> A debtor is required under Section 727(a)(3) "to provide creditors with enough

4

information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 882 (6th Cir. BAP 1999) (*quoting In re Martin*, 141 B.R. 986, 995 (Bankr. N.D. Ill. 1992)); *see also In re Wazeter*, 209 B.R. 222, 227 (W.D. Mich. 1997) (explaining that a condition precedent to discharge is that the debtor must provide to his creditors enough information to ascertain the debtor's financial condition and to track his finances with substantial accuracy for a reasonable period in the past to the present)). "The adequacy of a debtor's records must be determined on a case-by-case basis." *Id*. Bankruptcy judges "have broad discretion to deny discharge based on inadequately kept books and records. *Dolin v. N. Petrochemical Co. (In re Dolin)*, 799 F.2d 251, 253 (6th Cir. 1986). Factors that may be considered in such determinations include: "debtor's occupation, financial structure, education, experience, sophistication and any other circumstances that should be considered in the interest of justice." *In re Strbac,* 235 B.R. at 882 (*quoting United States v. Trogdon (In re Trogdon)*, 111 B.R. 655, 658 (Bankr. N.D. Ohio 1990)). Creditors and courts are not required to speculate regarding the financial condition and history of the debtor or to reconstruct the debtor's financial affairs. *Wazeter,* 209 B.R. at 227. Intent is not an element of a § 727(a)(3) exception to discharge. *Id.*

> A debtor is not required to keep books or records in any particular form, nor do the creditors have to establish an intent to conceal the financial condition, as long as complete disclosure is made so that the creditors are not required to guess at what actually occurred.

*U.S. Fidelity & Guaranty v. Delancey* (*In re Delancey*), 58 B.R. 762, 768 (S.D.N.Y. 1986). It is necessary that the party establish: "(1) that the debtor failed to keep or preserve books or records; and (2) that such failure makes it impossible to ascertain the debtor's financial condition

5

and material business transactions." *Stevenson v. Cutler (In re Cutler),* 291 B.R. 718, 724 (Bankr. E.D. Mich. 2003) (citing *Beneficial Mortgage Co. v. Craig (In re Craig)*, 140 B.R. 454, 458 (Bankr. N.D. Ohio 1992)).

Once a party establishes the inadequacy of a debtor's records, the burden shifts to the debtor to establish any justification for the quality of the debtor's records. *In re Strbac*, 235 B.R. 880, 883 (B.A.P. 6th Cir. 1999) (*quoting In re Trogdon*, 111 B.R. at 658 (citations omitted)); s*ee also In re Dolin*, 799 F.2d 251 (6th Cir. 1986) (debtor's drug and gambling addictions did not justify his difficulty in recording his business transactions).

Courts will deny a discharge under § 727(a)(3) when there is evidence of debtor misbehavior. For example, in *In re Delancey*, 58 B.R. 762 (S.D.N.Y. 1986), the debtor failed to produce records showing what he did with the proceeds from the sale of jewelry valued at over $269,000 and art valued at over $200,000. The debtor's failure to produce such records was not excused by his testimony that he simply did not maintain such records. *Id.* at 768. "The production of records to explain the disposition of substantial assets is a prerequisite to a debtor's relief from having to repay his creditors." *Id.* at 769.

Applying the above principles to the instant case, it is clear that the Debtor kept some records regarding her financial condition or business transactions. It is particularly noteworthy that the Debtor, who suffered her fire loss in June, 2006, knew by September, 2007, that she would receive at least $27,000 from her insurance company. It is also noteworthy that the Debtor sought bankruptcy counsel advice in August, 2007, and knew that she was to receive these proceeds when she contacted an attorney. The record is also clear that when the Debtor met with her attorney, she had at least $27,000 in her accounts. The Court assumes that counsel

fully and completely advised the Debtor of her obligations, as well as the discharge that she could receive in Chapter 7 and the possible loss of that discharge under 11 U.S.C. § 727. It is against this backdrop that the Court must analyze the Debtor's actions to determine whether her acts or failure to act was justified under those circumstances as articulated by 11 U.S.C. § 727(a)(3).

During closing arguments, much was made of the Debtor's efforts to account for these monies even though the Debtor does not use a "traditional" system of handling money. This Court recognizes that many debtors are distrustful of banks and other financial institutions and use cash, money orders, and similar devices to pay bills and transact business. In and of itself, the Court accepts this method of doing business and does not, on its face, condemn such a method.

In this case, however, the Debtor knew that she needed to account for at least $27,000 when she met with her bankruptcy attorney. The Debtor further knew that she would later be called upon to account for not only the actual expenditure of these monies, but the appropriateness of these expenditures. In this regard, the Debtor has not met the standards of 11 U.S.C. § 727(a)(3). First, the Debtor testified that many bills were paid by a money order, but she failed to keep all of these money orders. Instead, the Debtor testified that some money orders were lost, which under the Debtor's system of paying bills is the only method available to prove where monies went. Second, even those receipts kept by the Debtor do not clearly indicate that the money order was made payable to any particular individual or entity. Instead, the only evidence before the Court are a collection of receipts, some of which have a handwritten notation on them.

7

Belatedly, the Debtor attempts to reconstruct her expenditures, but is unable to corroborate these expenditures.  While the Court finds that the Debtor did not actively destroy, mutilate, or falsify records, the Court does find that the Debtor failed to keep or preserve recorded information, including books, documents, records, and papers from which the Debtor's financial condition might be ascertained.

This is even more so when placed in the time frame of when the Debtor received the $27,000 and then met with her bankruptcy attorney.  Unlike many cases before this Court in which a trustee complains that a debtor failed to keep records of transactions years ago, the Debtor fully knew by October, 2007, that she would in all likelihood file bankruptcy in the very near future.  Despite this knowledge, the Debtor simply did not keep either sufficient records or all of the records that she had available to her.  The Court, therefore, concludes that the Debtor should be denied a discharge under 11 U.S.C. § 727(a)(3).

B.      11 U.S.C. § 727(a)(5)

Section 727(a)(5) of the Code provides that the court shall grant a debtor a discharge unless "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."   The court in *Kovacs v. McVay (In re McVay)*, 363 B.R. 824 (N.D. Ohio 2006) explained that the purpose of this

> section is derived from competing concerns: (1) the trustee and creditors' right to question . . . debtor[s] about their financial affairs; and (2) the knowledge that debtors will not always be completely forthcoming with information about their financial activities.  Section 727(a)(5) seeks to address these competing concerns by conditioning discharge on a debtor satisfactorily explaining any prepetition diminution or loss of asset.  In order to achieve this, paragraph (a)(5) requires debtors to disclose all vital information; there is no requirement of mal-intent or scienter.  In addition, it does not matter under § 727(a)(5) how the loss or

8

deficiency occurred. For example, money spent on illegal activities does not run afoul of § 727(a)(5). Section 727(a)(5) is simply concerned with the adequacy of the debtor's explanation.

*Id.* at 830-31 (citations omitted).

To satisfy her initial burden of proof, the trustee must show two things: first, that the debtor had a cognizable ownership interest in a specific asset, and second, that the debtor's interest existed at a time not too far removed from when the petition was filed. *Id.* Once the trustee has met her burden, the debtor must satisfactorily explain the loss. The standard for a satisfactory explanation under § 727(a)(5) "is one that is reasonable under the circumstances." *Id.* at 831 (quoting *Lacy Wholesale & Main Factors v. Bell (In re Bell)*, 156 B.R. 604, 605 (Bankr. E.D. Ark. 1993). A reasonable explanation involves capacity for verification. The explanation should enable a trustee to investigate the circumstances of the loss. *Id*.

Similar to her § 727(a)(3) action, the Trustee has met her burden under § 727(a)(5). The Trustee has established that the Debtor had an ownership interest in the insurance proceeds of $27,000. This interest existed as early as June, 2006, when the Debtor suffered her fire loss and was confirmed in the form of a check from her insurance company on September 26, 2007, a mere six months before the Debtor filed her bankruptcy case. The Trustee has clearly met her burden of proof in regard to the two elements addressed in the previous paragraph.

Now turning to the Debtor's duty to explain the loss of the $27,000, the Court likewise finds that while the Debtor has attempted to explain the expenditure of some monies, not all monies are accounted for. Second, even the proof of payment of some expenditures, such as the money orders, lack the sufficient supporting information to give this Court the necessary assurances that the Debtor did actually pay certain individuals or entities with these bank money

9

orders. Likewise, the Court concludes that the Debtor has failed to meet her burden of proof and that her discharge must be denied under § 727(a)(5).

Throughout the Court's Opinion, the Court has assumed that the Debtor was only entitled to receive $27,000 for her fire loss. The Court has based its conclusion on the testimony of the Debtor which establishes to the Court's satisfaction that the Debtor believed that she was only entitled to one-half of the insurance proceeds and, as importantly, disclosed the recipient of the other $27,000. The Court finds that the Debtor did properly disclose and account for the tendering of $27,000 to Kimberly Moore and that the Debtor did meet the statutory obligations imposed upon her by 11 U.S.C. § 727 in regard to the disclosure of these proceeds.

### V. Conclusion

Since the Court's conclusion is that the Debtor is denied a discharge under 11 U.S.C. §§ 727(a)(3) and (a)(5), the Court need not address the remaining counts of the Trustee's Complaint and, therefore, denies the relief requested by the Trustee as to 11 U.S.C. §§ 727(a)(2), (a)(4)(A), and (a)(4)(D), as moot.

The Court will enter an Order consistent with this Opinion.

**Signed on April 24, 2009**

                                       **/s/ Daniel S. Opperman**
                                    **Daniel S. Opperman**
                                    **United States Bankruptcy Judge**